**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| SHALIMAR BEACH, Plaintiff, vs. WAL-MART STORES, INC., Defendant. | ) | 3:11-cv-00007-HDM-VPC<br><br>ORDER |

Before the court is the defendant Wal-Mart's ("defendant") motion for attorney's fees and nontaxable costs (#74). Plaintiff Shalimar Beach ("plaintiff") has opposed (#75), and defendant has replied (#79). Pursuant to order of the court, the parties have filed supplemental briefs addressing the impact of the Ninth Circuit's decision in *Goldberg v. Pacific Indemnity Company*, 627 F.3d 752 (9th Cir. 2010) on defendant's request for nontaxable costs (#84, #89).

Plaintiff's complaint, which asserted a single claim of negligence against defendant, was filed in state court on December 3, 2010, and removed to this court on January 5, 2011. On May 23,

2012, defendant made plaintiff an offer of judgment in the amount of One Hundred Thousand and One dollars ($100,001.00). The offer was made pursuant to Nevada Revised Statute § 17.115 and Federal Rule of Civil Procedure 68. (Def. Mot. Attorney's Fees Ex. 1). Plaintiff rejected the offer. (Def. Reply Ex. 4).

On October 30, 2012, trial commenced. On November 1, 2012, the jury found in favor of the defendant and against the plaintiff. Judgment was filed on November 1, 2013, and entered on November 6, 2012. On November 15, 2012, defendant filed the instant motion for attorneys' fees and nontaxable costs. Defendant seek attorneys' and paralegal fees in the amount of Thirty-Nine Thousand, Three Hundred Fifty-Six dollars ($39,356.00),[1] incurred from the date of its offer of judgment to the date of entry of judgment, and other nontaxable costs in the amount of Thirty-Six Thousand Three-Hundred Twenty-Five Dollars and Twenty Eight Cents ($36,325.28).

**I. Attorneys' Fees**

Defendant bases its claim for attorney's fees on Federal Rule of Civil Procedure 54(d)(2), Nevada Rule of Civil Procedure 68, and Nevada Revised Statutes § 17.115.

Federal Rule of Civil Procedure 54(d)(2) sets forth the procedure for obtaining an award of attorneys' fees in federal court. It does not, however, provide the substantive basis for such an award. Fees are recoverable only if there is a rule, statute, or contract that authorizes such an award. *See MRO Commc'ns, Inc. v. Am. Tel & Tel. Co.*, 197 F.3d 1276, 1281 (9th Cir. 1999).

---

[1] Defendant originally sought $41,628.00 but subsequently lowered its request to remove fees incurred after November 6, 2012.

A motion under Rule 54(d)(2) must identify the basis for the requested award. Here, defendant identifies Nevada Revised Statutes § 17.115.[2] Section 17.115 provides that "[a]t any time more than 10 days before trial, any party may serve upon one or more other parties a written offer to allow judgment to be taken in accordance with the terms and conditions of the offer of judgment." *Id.* § 17.115(1). If a party rejects an offer of judgment and fails to obtain a more favorable judgment, the court may order that party to pay the offeror's "[r]easonable attorney's fees incurred by the [offeror] for the period from the date of service of the offer to the date of entry of the judgment." *Id.* § 17.115(4)(d)(3).

Where, as here, the "court is exercising its subject matter jurisdiction over a state law claim," a party may recover attorneys' fees under state law giving a right thereto if the law "reflects a substantial policy of the state" and "does not run counter to a valid federal statute or rule of court." *See MRO Commc'ns*, 197 F.3d at 1281 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975)).

The controlling case applicable to the facts of this case is *MRO Communications*. In that case, the Ninth Circuit held that under Federal Rule of Civil Procedure 54(d)(2), a prevailing defendant could recover attorney's fees incurred after a rejected offer of judgment made pursuant to Nevada state law. *Id.* Here, defendant made an offer of judgment pursuant to Nev. Rev. Stat. § 17.115. Defendant made its offer of judgment more than ten days

[2] While defendant also identifies Nevada Rule of Civil Procedure 68, its offer of judgment was not made pursuant to that rule. It is therefore not a basis for an award in this case.

before trial. Plaintiff rejected the offer but failed to obtain a more favorable judgment. Accordingly, under *MRO Communications* and § 17.115, the defendant may recover reasonable attorney's fees.

Even so, plaintiff asserts several reasons why she believes an award of attorney's fees in this case would be improper.

First, plaintiff argues that fees may only be awarded where the complaint was frivolous, groundless, or brought to harass. However, the case cited by plaintiff for this proposition – *Bobby Berosini, Ltd. v. People for the Ethical Treatment of Animals*, 971 P.2d 383, 386-87 (Nev. 1998) – involved an award of fees under Nevada Revised Statues § 18.010, which authorizes a court to award attorney's fees when a claim "was brought without reasonable ground or to harass the prevailing party." As such, the case is inapplicable here, where the award of attorney's fees is based on Nevada Revised Statutes § 17.115.

Second, plaintiff objects to an award of fees because defense counsel has not disclosed his fee agreement with Wal-Mart. Defense counsel argues that the fee agreement is protected by attorney-client privilege but represents the rates set forth in the motion for attorney's fees are the rates actually charged to and agreed to be paid by the defendant. (Def. Reply Ex. 1 (Kent. Decl. ¶ 23)). Plaintiff cites no law requiring disclosure of the defendant's fee agreement before an award of fees. Defense counsel has represented that the rates are accurate, and the court finds the rates do not exceed the reasonable, customary rate in this community.

Third, plaintiff appears to argue that because defendant declined plaintiff's request to later settle the case for the

offer-of-judgment amount that any award of fees is not merited. Plaintiff did not accept defendant's formal offer to settle the case for $100,001.00 before it expired. Further, plaintiff waited until the eve of trial to attempt to accept the offer. By that time, the defendant had incurred a substantial amount in fees to prepare for trial and had no obligation to submit another offer of settlement.

Finally, plaintiff asserts that fees should be denied because defendant did not identify a federal rule allowing recovery of attorney's fees. Defendant identified Federal Rule of Civil Procedure 54(d)(2), which in conjunction with the offer-of-judgment made pursuant to Nevada Revised Statutes § 17.115 provides a basis for recovery in this case.

Under *MRO Communications* and § 17.115, the defendant may recover reasonable attorney's fees subject to the court's considerations of the factors set forth in *Beattie v. Thomas*, 668 P.2d 268, 274 (Nev. 1983). The court has the discretion to allow any or all of the offeror's attorneys' fees incurred after service of the offer. *Id.* In fashioning an award, the court must consider four factors: (1) whether the plaintiffs' claim was brought in good faith; (2) whether the defendant's offer of judgment was reasonable and in good faith in both its timing and amount; (3) whether the plaintiffs' decision to reject the offer and proceed to trial was grossly unreasonable or in bad faith; and (4) whether the fees sought by the offeror are reasonable and justified in amount. *Id.*; *see also RTTC Commc'ns, LLC v. Saratoga Flier, Inc.*, 110 P.3d 24, 28 (Nev. 2005). An award of fees may be proper even where the plaintiff's claim was brought in good faith and the plaintiff did

not act unreasonably in rejecting the offer of judgment. *See RTTC*, 110 P.3d at 29-30.

Plaintiff brought her claim to recover damages for injuries suffered after slipping and falling in a puddle of water on defendant's premises. The court finds plaintiff's claim was brought in good faith.

The defendant made its offer of judgment after discovery had closed but months before the trial date. This timing allowed plaintiff to consider the offer in light of the evidentiary strength of her claim before having to engage in much costly and time-consuming trial preparation. The offer was therefore reasonable in timing. While at the time defendant made its offer plaintiff's claimed medical damages and lost wages exceeded $100,001, the offer was reasonable given the weaknesses defendant perceived in plaintiff's case,[3] including the lack of evidence that defendant was aware of or caused the water spill and its expert's opinion that a mere five percent of plaintiff's claimed medical damages could be attributed to the fall.

For the same reason, plaintiff's decision to reject the offer and proceed to trial was unreasonable, although not grossly so.

Finally, the fees sought are for the most part reasonable and justified, as discussed further below.

On balance the court concludes the defendant is entitled to an

[3] Plaintiff argues that the offer was unreasonable because defendant later refused to settle for $100,000.00 and repeatedly declined to attend a settlement conference with plaintiff. Plaintiff also argues that the offer was just one part of ongoing settlement negotiations so her rejection of the $100,000 was not unreasonable. The court finds these assertions irrelevant to determining whether the offer made by defendant was reasonable.

award of its reasonable attorney's fees.

The first step in determining an attorney's fee award is to calculate the "lodestar." *Candle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1028 (9th Cir. 2000). The lodestar is reached by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. *Id.* In most cases, the lodestar is presumptively a reasonable fee award. *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001). However, if the circumstances warrant, the court may "adjust the lodestar to account for other factors that are not subsumed within it." *Id.* Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1158 (9th Cir. 2002) (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)). The court need not consider all factors – "only those called into question by the case at hand and necessary to support the reasonableness of the fee award." *Id.* In determining the hours to be included in the lodestar, the court should exclude hours that are "excessive, redundant, or otherwise unnecessary." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009).

In this case, the defendant seeks $145 per hour for lead counsel Stephen Kent, $135 per hour for associate counsel Shannon

Parke, and $90 per hour for paralegal Sherril Metcalf. The court concludes these are reasonable hourly rates well within the range of customary hourly charges in this locality.

The defendant seeks compensation for 118.7 hours by Mr. Kent, 127.8 hours by Ms. Parke and 79.6 hours by Ms. Metcalf. In determining whether the hours sought are reasonable, the court considers the plaintiff's several specific objections.

1. 7/19/12: Research federal procedural rules, setting order, and local rules and prepare memorandum of pre-trial dead lines - 1.8 hours

10/16/12: Legal research on cases indicating "mere happening" instruction is no longer good law; note distinguishing facts in analysis of law in premises liability context - 1.5 hours

10/23/12: Legal research and legal requirements for the pre-trial brief - .5 hours

Plaintiff objects to these charges incurred by Ms. Parke on that grounds that Mr. Kent, who has represented Wal-Mart for 20 years, should have been well-versed in federal court procedures and could have shared that knowledge with Ms. Parke. Plaintiff provides no specific basis for objecting to the "mere happening" jury instruction research. Defense counsel responds that research of procedural rules is always necessary as rules are often changing, and that research of the "mere happening" instruction was necessitated by plaintiff's own motion in limine challenging its inclusion. The court finds these charges reasonable and necessary.

2. 7/24-12 to 11/1/12: Various charges relating to compilation and redaction of exhibits – 58.4 hours

Plaintiff objects to several of these charges as unreasonable and/or duplicative.

First, plaintiff asserts that defendant's assembly of her medical files into exhibits was duplicative because she had included her entire relevant medical file in her proposed exhibits, which she gave to defense counsel a week before trial. Second, she asserts that the charges for redacting defendant's exhibits were unreasonable because defense counsel repeatedly failed to redact portions that plaintiff's counsel had already asked to be redacted, requiring multiple revisions instead of just one. Third, plaintiff objects to charges for assembling exhibits that were deemed unrelated and thus inadmissible. Finally, plaintiff objects to the total number of hours spent on exhibits as excessive.

Defendant responds that it could not rely on plaintiff's exhibits as she had extensively redacted them, including removal of reference to items that defense counsel thought might be admissible at trial. Further, it argues that the repeated redactions were necessitated by court rulings during trial, and that it was impossible to know which exhibits would be admitted and which would not. Finally, defendant asserts that plaintiff's representation of the 58.4 hours of work is a gross oversimplification and that much more work was conducted during than those hours than simply compiling and redacting exhibits.

The court finds that – with one exception – the time spent by Ms. Metcalf from July 24, 2012 to August 1, 2012, to compile the

defendant's exhibits was reasonable and necessary preparation for trial. However, defendant does not explain why there are two entries for the addition of Carson Tahoe records to exhibit binders on August 1, 2012. The court will therefore reduce the fee award by 0.3 hours attributable to Ms. Metcalf on August 1, 2012. The court rejects plaintiff's objection to the inclusion of these records at all. The Carson Tahoe records apparently related to plaintiff's April 2009 visit to the emergency room after sticking herself in the eye with a bamboo stick. While these records were ultimately deemed inadmissible, defendant's argument for their inclusion was not completely frivolous. Therefore, the defendant is entitled to recover for the time spent to incorporate them into the exhibit binders.

The court finds that the time spent from October 23, 2012, to November 1, 2012, to make copies of and redactions to the exhibits should be discounted due to duplication and/or unnecessary multiple revisions. Recognizing that there were ongoing issues regarding the extent of required redactions, but also recognizing that time spent copying and redacting was increased by defendant's inclusion of many duplicative exhibits and arguments to leave unredacted many documents that should have been redacted, the court finds it proper to reduce the hours spent for copying and redacting by twenty-five percent. Therefore, the charges for those items - 2.4 hours (SAM) on October 23, 2012, 3.9 hours (SAM) and 2.9 hours (SAM) on October 24, 2102, 4.2 hours (SAM) on October 25, 2012, 3.4 hours (SAM) on October 30, 2012, 1.6 hours (SKP), .4 hours (SKP), and 3.6 hours (SAM) on October 31, 2012, and 3 hours (SAM) on November 1, 2012 - will be reduced by twenty-five percent. The court finds the

remainder of the time spent during that period to be reasonable and necessary.

3. 8/1/12: Read records obtained from Sutter Auburn Faith Hospital pertaining to Plaintiff's prior hysterectomy – .4 hours

8/1/12: Discuss Sutter Auburn Faith records – .1 hours

Plaintiff objects to these charges because they involve medical records unrelated to her damages in this case. Defendant responds that a half hour to review and discuss whether plaintiff's hysterectomy records should be included is reasonable. The court concludes that this time was reasonably spent evaluating plaintiff's medical records to determine if they were relevant to the case.

4. 9/17/12 to 10/22/12: Focus Group Mock Trial Expenses – 33.1 hours[4]

Plaintiff objects to these charges because a mock trial is not a reasonable and customary legal service. Defense counsel responds that it had an obligation to be well prepared and receive an independent evaluation of the case before trial. The court is not persuaded by the defendant's argument. The following charges will therefore be omitted from the attorney's fee award: (1) 9/17/12 – email about focus group; read response – .1 hours (SSK); (2) 9/21/12 – email about mock trial – .1 hours (SSK); (3) 9/25/12 – begin drafting Beach's mock trial case statement to show to focus group – 3.7 hours (SKP); (4) 9/26/12 – continue work on Plaintiff's focus group case statement – 5.4 hours (SKP); (5) 9/27/12 – finish

[4] While plaintiff's opposition objects to 28 hours, the line items she objects to total 33.1 hours.

drafting Plaintiff's mock trial case statement for focus group – 5.1 hours (SKP); (6) 10/10/12 – work on mock trial opening statement – 1.8 hours (SSK); (7) 10/11/12 – revise Plaintiff's case summary for focus group – .8 hours (SKP); (8) 10/11/12 – prepare law and jury instructions for focus group – 2.2 hours (SKP); (9) 10/11/12 – work on and present opening statement for mock trial – 5.6 hours (SSK); (10) 10/15/12 – participate in mock trial – 3.6 hours (SSK); (11) 10/15/12 – attend and take notes on focus group discussion and results – 2.7 hours (SKP); (12) 10/16/12 – email report to Julie Gibbens about mock trial results – .9 hours (SSK); (13) 10/19/12 – read mock trial report – .5 hours (SSK); (14) 10/22/12 – read focus group summary to discuss with Mr. Kent – .6 hours (SAM). The court notes that while some of this time included preparation of jury instructions and an opening statement, there are other entries in the billing records for these items that are reasonable and unrelated to the mock trial. There is no reason to compensate for the same work twice.

5. 10/26/12: Take exhibits to court clerk at courthouse, discuss exhibits – 1.8 hours (SSK)

Plaintiff objects to this charge as excessive because defense counsel's office is only three blocks from the courthouse and a messenger could have provided the same service instead of Mr. Kent. In addition, she argues, the charge is duplicative because Ms. Metcalf spent half an hour discussing exhibits with the courtroom deputy the day before. Defendant responds that this charge was for reviewing, loading and taking the exhibits to the courthouse, locating and waiting for the clerk, discussing the exhibits, and returning. The court finds this expense reasonable and not

duplicative of Ms. Metcalf's time. As Mr. Kent was the attorney who represented defendant at trial, it was reasonable and necessary for him to spend time with the courtroom deputy discussing the presentation of exhibits.

6. 10/26/12 to 10/29/12: Time spent assembling information on prospective jurors and preparing for voir dire - 8.1 hours

Plaintiff objects to these charges as an excessive and seeks a fifty percent reduction. Defendant responds that voir dire preparation is critical, and this time was reasonable. The court concludes that the time spent preparing for voir dire was reasonable and not excessive.

7. 11/5/12 to 11/6/12: Charges for researching and preparing Bill of Costs and Motion for Attorney's Fees - 4.2 hours[5]

Plaintiff argues that because judgment should have been entered the date the jury returned the verdict - November 1, 2012 - defendant should not be allowed to recover any fees incurred thereafter. Defendant responds that it should be allowed to recover for what was standard post-trial work. Because the judgment should have been entered on the date the jury returned its verdict, the court in its discretion will not allow fees incurred after November 1, 2012. Accordingly, these fees will be denied.

---

[5] Plaintiff originally objected to all fees sought in connection with preparation of posttrial motions, which were incurred up to November 13, 2012. Defendant conceded that all fees incurred after the day judgment was entered cannot be recovered. This number reflects the request for fees incurred November 6, 2012, and earlier.

8. 7/24/12 to 9/19/12: Time spent preparing motions in limine – 12.5 hours

Plaintiff objects on the basis that defendant's motion in limine was "mainly stock or omnibus." Defendant responds that the time spent drafting seventeen motions in limine was reasonable and a necessary part of pretrial preparation. The court finds that defendant's motions in limine were primarily stock and many requested relief that is clearly provided for in the Federal Rules of Civil Procedure. Accordingly, the court discounts the time spent on defendant's motion in limine by two-thirds. The time spent by Mr. Kent will be reduced from 2.5 hours to 1.66 hours and the time spent by Ms. Parke will be reduced from 10 hours to 6.67 hours.

9. 7/20/12: Compile list of witnesses with contact information and a brief description of prior testimony and statements – 2.5 hours (SKP)

7/24/12: Prepare list of documents disclosed to Plaintiff to compare to list of documents identified in pretrial order – 2.1 hours (SAM)

Plaintiff objects to this time as duplicative of work done earlier in litigation, citing to defendant's disclosures of witnesses and documents and all supplements thereto. (Pl. Opp'n Ex. 6). The court finds that the first charge, while summarizing information already disclosed, also included updating that information to include any relevant testimony obtained during discovery as to those witnesses. Accordingly, the court finds this charge reasonable. The court finds that the second charge was for essentially summarizing information already disclosed to the

plaintiff, and as such the charge for 2.1 hours is excessive. The court will reduce this charge by fifty percent.

10. 8/30/12 to 9/27/12: Time spent creating a special damages chart – 9.3 hours

Plaintiff objects on the grounds that 9.3 hours was an excessive amount of time to compile a chart consisting of relatively few medical expenses as well as information about insurance that was inadmissible. Defendant responds that considerable time was required to sort through plaintiff's medical bills to determine which were attributable to her slip-and-fall. It also argues that the insurance information was relevant because defendant should not have had to pay more in damages than plaintiff's insurance actually paid out. The court finds this charge reasonable and denies plaintiff's objection to such.

11. 8/30/12 to 10/26/12: Charges for working on jury instructions – 7.7 hours

Plaintiff argues that this time is excessive because most of defendant's proposed instructions were stock and counsel also spent time researching an assumption of the risk instruction that the court ultimately concluded did not apply. Plaintiff requests only that the time spent by SKP (4.3 hours) be denied.

Defendant responds that preparation of jury instructions is a time consuming but important task, that the law is always changing, and that there are many things the parties need to consider in assembling their instructions.

The court finds this charge reasonable and denies plaintiff's objection to such.

12. 10/23/12: Prepare request for leave to file reply - 2 hours
10/25/12: Revise motion for leave to file reply and reply in support of motion in limine II - .9 hours

Plaintiff objects to these charges as replies are not allowed to motions in limine. Defendant responds that it was required to prepare a request for leave to file the reply precisely because replies are not typically allowed, and that a reply was necessitated here by new information raised by plaintiff during the pretrial conference. The court finds these charges reasonable and denies plaintiff's objection to such.

13. 11/6/12: Expenses incurred the day judgment was entered - 1.2 hours

As discussed above, the court declines to award these expenses.

Accordingly, based on these adjustments, the court calculates the lodestar as follows:

| | |
|---|---|
| 102.5 hours at $145/hour: | $14,862.50 |
| 88 hours at $135/hour: | $11,880.00 |
| 66.8 hours at $90/hour: | $6,012.00 |
| Total: | $32,754.50 |

The court does not find reason to adjust the lodestar up or down based on any of the factors. The fees sought were reasonable and customary and if anything below market, and defense counsel obtained a very favorable result. Accordingly, the defendant's motion for attorney's fees is **GRANTED** in the amount of $32,754.50.

**II. Nontaxable Expenses**

Defendant seeks $27,494.86 in expert witness fees, $300.00 in "witness location investigation" fees, and $8,531.42 in "mock trial/focus group" expenses. Defendant bases its request on Nevada Revised Statutes §§ 17.115, 18.020, and 18.005.

In actions brought to recover more than $2,500, Nevada law allows recovery of up to $1,500 per expert witness "unless the court allows a larger fee after determining that the circumstances surrounding the expert's testimony were of such necessity as to require the larger fee," § 18.005(5), and "[a]ny other reasonable and necessary expense incurred in connection with the action," § 18.005(17). Nev. Rev. Stat. § 18.020(3). Where a plaintiff has rejected an offer of judgment made pursuant to § 17.115 but has failed to obtain a more favorable judgment, Nevada law allows the court to order payment of the defendant's reasonable expert witness costs. Nev. Rev. Stat. § 17.115(4)(d)(1).

Where a statute authorizes an award of reasonable attorney's fees to a prevailing party, the court has the discretion to award reasonable out-of-pocket litigation expenses as part of the attorney's fee award "when it is the prevailing practice in a given community for lawyers to bill those costs separate from their hourly rates." *Grove v. Wells Fargo Fin. Calif., Inc.*, 606 F.3d 577, 579-82 (9th Cir. 2010). These "do not include costs that, like expert fees, have by tradition and statute been treated as a category of expenses distinct from attorney's fees." *Trustees of the Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258 (9th Cir. 2006). Defendant has not made any showing it is the prevailing practice in this community

for lawyers to bill mock trial expenses or witness location investigation fees costs separate from their hourly rates. See *Grove*, 606 F.3d at 579-82; *see also Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co., Ltd.*, 668 F.3d 677, 690 (9th Cir. 2012) (finding abuse of discretion in awarding nontaxable expenses as part of attorney's fee award where no finding made that it was the prevailing practice in the local community to charge such costs separately from attorneys' fees). Further, the court finds neither expense to be a reasonable litigation cost that should be compensated. As discussed above, defendant's mock trial expenses have not been shown to be reasonable and customary litigation expenses. Further, defendant has not explained why it did not have its former employee Rachel Davis' contact information. Although Davis left her employment with defendant before the trial in this matter, defendant was on notice that she was a potential witness in this case before she left. The fees for a private investigator to track Davis down after defendant failed to maintain Davis' contact information should not be shifted to plaintiff. For the same reasons, to the extent these items are recoverable under Nevada Revised Statutes § 18.005(17) and § 18.020(3), the court finds neither to be a reasonable and necessary litigation expense. The request for mock trial expenses and witness location investigation fees is therefore **DENIED.**

The award of expert witness fees in federal court is a procedural matter controlled by federal statute. *See Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1168 (9th Cir. 1995) ("[F]ederal law should control the reimbursement of expert witnesses in federal courts sitting in diversity jurisdiction."); *see also First Nat'l*

*Mortgage Co. v. Fed. Realty Inv. Trust*, 631 F.3d 1058, 1070-71 (9th Cir. 2011). "[W]hen a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limit of § 1821(b), absent contract or explicit statutory authority to the contrary." *Crawford Fitting Co. v. J.T. Gibbons*, Inc., 482 U.S. 437, 439 (1987); *see also Tracy v. Am. Family Mutual Ins. Co.*, 2010 WL 5477751, at *8-9 (D. Nev. 2010) (diversity action in which the court granted expert witness fees subject to the limit of § 1821(b)). Therefore, § 1821(b) controls to the exclusion of Nevada cost provisions authorizing higher expert witness fees. Nor does Nevada's offer-of-judgment statute provide a basis for awarding fees beyond those provided for in § 1821(b). The Ninth Circuit has held that where a state offer-of-judgment statute purports to grant the right to recover expert witness fees, and the policies underlying the state statute "are sufficiently coextensive with the asserted purposes of" Federal Rule 68 "to indicate that the Federal Rule occupies the state rule's field of operation, then the two rules are in direct conflict and the Federal Rule precludes the state rule's application in federal diversity actions." *Goldberg*, 627 F.3d at 755-58 (internal punctuation omitted). While *Goldberg* involved Arizona Rule of Civil Procedure 68, an offer-of-judgment rule allowing recovery of double costs and expert witness fees, the court concludes there is no material difference between Arizona Rule 68 and Nev. Rev. Stat. § 17.115(4)(d)(1) in their purpose or application. *See Albios v. Horizon Communities, Inc.*, 132 P.3d 1022, 1029 (Nev. 2006) (noting the purpose of § 17.115 is "to save time and money for the court system, the parties, and the taxpayer"); *John W. Muije, Ltd. v. A N. Las Vegas Cab Co., Inc.*,

799 P.2d 559, 561 (Nev. 1990) ("The purpose of [§] 17.115 is to promote settlement of suits by rewarding defendants who make reasonable offers and penalizing plaintiffs who refuse to accept them."). Accordingly, the defendant's recovery of expert witness fees is limited to those provided for by 28 U.S.C. § 1821(b). Defendant did not seek these fees in its bill of costs. The defendant's motion for expert witness fees is therefore **DENIED.**

**Conclusion**

The defendant's motion for attorney's fees and other nontaxable costs (#74) is **GRANTED IN PART** and **DENIED IN PART.** It is **DENIED** as to the request for expert witness fees and other nontaxable costs. It is **GRANTED** as to the request for attorney's fees, which are hereby awarded in the amount of $32,754.50.

IT IS SO ORDERED.

DATED: This 23rd day of July, 2013.

Howard D McKibben

UNITED STATES DISTRICT JUDGE